J-S07032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| C.L.S., IV | : | |
| | : | |
| Appellant | : | No. 1044 WDA 2020 |

Appeal from the Order Dated September 4, 2020
In the Court of Common Pleas of Lawrence County
Civil Division at No(s):  No. 10618 of 2017 C.A.

BEFORE:  SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: APRIL 19, 2021**

Appellant, C.L.S., IV ("Father"), appeals from the order entered in the Lawrence County Court of Common Pleas, which modified the custody agreement between Father and Appellee, K.K. ("Mother"), as it relates to their minor children, A.M.S. and R.L.S. ("Children").  We affirm.

The relevant facts and procedural history if this case are as follows. Father and Mother are the parents of Children.  On June 26, 2017, Mother filed a complaint seeking primary physical and legal custody of Children. Following a hearing, the court entered a custody order on August 1, 2017, providing for shared legal custody and awarding Mother primary physical custody of Children.  Father received partial physical custody with two overnights in the first week and three overnights on the next week, with the exact days and times to be determined by Father's work schedule.  Each

parent was awarded a three-hour custody session with Children while the other parent was exercising his or her custody rights.

Mother became involved in a relationship with J.I. and is currently engaged to him. Father learned about allegations that J.I. had inappropriately touched J.I.'s own daughter. On March 27, 2019, the parties entered into a consent order prohibiting J.I. from residing at Mother's residence or being in the presence of Children.

On May 28, 2019, Mother filed a petition for special relief, seeking to suspend Father's partial physical custody due to her suspicion that Father was using drugs and alcohol. The court suspended Father's custody and ordered him to undergo a drug test. On June 18, 2019, following a hearing, the court found that Father had violated the prior custody order by consuming alcohol during his custodial period. The court removed Father's overnight custodial periods but agreed to reconsider if Father completed counseling.

On August 26, 2019, Father filed a request for a custody modification, claiming that he had been evaluated for alcoholism. On September 27, 2019, Mother filed a petition for special relief, requesting that the court vacate the consent order prohibiting J.I. from living with Mother. Mother contended that J.I. was not a threat to Children and that he presently had unsupervised custody of his son and was attending reunification therapy with his daughter.

On October 10, 2019, the court issued an interim custody order that awarded parents shared legal custody, Mother primary physical custody, and

Father partial custody, with one overnight per week. The order provided that Children would have no contact with J.I., and that Father was prohibited from consuming alcoholic beverages during, or 24 hours prior to, his custodial periods.

The court held a custody trial on August 12, 2020. At the trial, Mother testified and presented the testimony of Dr. Shannon Edwards, who had conducted a parental capacity evaluation of J.I. Father also testified, and presented the testimony of M.S., and Father's girlfriend, E.K.

Following the custody trial on September 4, 2020,[1] the court issued findings of fact, conclusions of law, and a new custody order which awarded Mother primary physical custody and Father partial physical custody of Children every other weekend during the school year and a period of evening custody on his non-custodial weeks, as well as periods of summer custody, holidays, and birthdays per the court's schedule. The court ordered that neither parent was to consume any alcoholic beverage or use any non-prescribed drug during or 12 hours prior to his/her custodial period. The court permitted Children to have contact with J.I., but J.I. was not to be alone with Children or drive a car with Children in it.

On September 23, 2020, Mother filed a motion for clarification and reconsideration regarding Father's off week after-school custody and the

---

[1] The order is dated August 24, 2020, but was not filed until September 4, 2020.

specifications regarding J.I.; that same day, the court entered a modification order, explaining that Father would have custody on Thursday evenings during the weeks that he does not have weekend custody. Father timely filed a notice of appeal on October 2, 2020;[2] Father filed a concise statement of errors complained of on appeal on October 8, 2020.[3]

Father raises the following issues for our review:

> Whether the trial court abused its discretion in permitting [Mother's] boyfriend, [J.I.], supervised contact with the children, where [J.I.] has an admitted history of sexual [deviant] behavior for which no treatment has ever been sought and [Mother] has a standing history of failing to abide by court order?
>
> Whether the trial court abused its discretion in finding [Father] had consumed alcohol, left the children with responsible adults to go drink alcohol, and drove the children after imbibing in alcohol based on prior testimony of the minor child in which there was evidence that the minor child lied to the court and using such evidence as a substantial factor in not awarding [Father] primary physical custody?

(Father's Brief at 15).

---

[2] The trial court's September 23, 2020 order served only to clarify a clerical error on the September 4, 2020 order, which is a final order for purposes of this appeal.

[3] Although Father failed to file his concise statement contemporaneously with his notice of appeal, we decline to quash or dismiss the appeal on this basis. **See In re K.T.E.L.**, 983 A.2d 745 (Pa.Super. 2009) (holding that failure of appellant in children's fast track case to file concise statement along with notice of appeal results in defective notice of appeal to be decided on case by case basis; declining to quash or dismiss appeal where defect did not prejudice other parties and to expedite disposition of children's fast track cases).

Our standard and scope of review in custody cases are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa.Super. 2012) (internal citation omitted). This Court has consistently held:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa.Super. 2006) (internal citation omitted). In addition:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

- 5 -

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (internal

citations omitted). Further:

> The parties cannot dictate the amount of weight the trial
> court places on the evidence. Rather, the paramount
> concern of the trial court is the best interest of the child.
> Appellate interference is unwarranted if the trial court's
> consideration of the best interest of the child was careful
> and thorough, and we are unable to find any abuse of
> discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa.Super. 2009).

For purposes of disposition, we combine Father's issues. In his first

issue, Father argues the court erred and abused its discretion in permitting

J.I. to have supervised contact with Children. (Father's Brief at 21).

Specifically, Father contends that J.I. is a danger to Children due to his history

of drug and alcohol abuse; sexual deviant behavior; and continued use of

alcohol and medical marijuana. (***Id.*** at 22-23). Father asserts that J.I. did

not provide documentation that he had been treated for his sexually deviant

behavior and did not testify at the custody hearing. (***Id.*** at 23-24). Father

maintains that the forensic report prepared in this case determined only J.I.'s

parental capacity but did not specifically address his sexual deviant conduct.

(***Id.*** at 24). Father contends that because Mother previously violated the no-

contact orders, Children will be exposed to potential sexual abuse by J.I. (***Id.***

at 25).

In his second issue, Father argues that the court erred and abused its

discretion in finding that Father consumed alcohol; left Children with other

adults to drink alcohol; and drove with Children after imbibing alcohol. (*Id.* at 26). Father claims the court based this finding on the prior testimony of one of the children, and there was evidence that child had lied to the court. (*Id.*). Thus, Father insists that using this evidence as a substantial factor in its custody decision was in error. (*Id.*) Father concludes the court's custody decision was erroneous, and this Court must reverse. We disagree.

Section 5328(a) of the Child Custody Act sets forth the best interest factors that the trial court must consider in awarding custody:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5)    The availability of extended family.

(6)    The child's sibling relationships.

(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the trial court addressed each custody factor as follows.  The court found that the first custody factor favored Father, because Mother had

used the Covid-19 pandemic as an excuse to deny Father his custody time. (*See* Trial Court Opinion and Order, filed 9/4/2020, at 4).

With regard to the second factor, the court found this factor favored neither parent. (*Id.* at 6). The court observed that Mother's ability to protect Children should J.I. act inappropriately was in doubt, and also emphasized that Father had driven with Children while drinking and placed his enjoyment before the best interests of Children. The court explained:

> While there have been allegations that [J.I.] improperly touched his own daughter, no proof of these allegations has been established. [J.I.] is the fiancée of [M]other and [M]other continued to allow [J.I.] to have frequent contact with [C]hildren for at least a several month period of time in direct violation of this [c]ourt's order. Despite the fact that [J.I.] has had serious problems with alcohol and drugs and at least when he was an adolescent child, has acted out inappropriately, [M]other has stated that she has no concerns at all about [J.I.] having contact with [C]hildren and living in the same home with them. She also had no concerns that despite drug and alcohol abuse in the past, [J.I.] uses medical marijuana and continues to consume alcohol, at least socially. [M]other is now pregnant with [J.I.]'s child and due to deliver in September of 2020. [M]other has violated [c]ourt [o]rders in the past, and cannot be trusted to put [C]hildren's own welfare in front of her own welfare and desire to live with [J.I.]. There is no indication that [M]other has ever abused [C]hildren, the question is whether or not she would protect [C]hildren if they were ever subject to abuse. The only reason [J.I.] is not living in the home with [M]other is the current [c]ourt [o]rder forbidding it.
>
> [F]ather has not abused [C]hildren and there is no indication that he is likely to abuse [C]hildren. Nonetheless, he has driven with [C]hildren in the car when he has been consuming alcohol and during his periods of custody has left [C]hildren with others while he has gone out to drink. [F]ather also testified that he has known [J.I.] since [J.I.]

- 9 -

was fifteen and was aware of [J.I.]'s drug problems and his having a reputation as a heroin addict. Despite that knowledge, [F]ather testified that he had no problem with [J.I.] being around [C]hildren, until [J.I.'s] ex-wife told him about allegations that [J.I.] had inappropriately touched his own daughter and had admitted to sexual misconduct when he was an adolescent. [J.I.'s] ex-wife found a confidential Alcoholics Anonymous list, made by [J.I.], of conduct that [J.I.] regretted in his past and she disclosed the information from the confidential form to [F]ather.

\*    \*    \*

This [c]ourt has serious concerns about [M]other's willingness to protect [C]hildren, if [J.I.] should act inappropriately. On the other hand, [F]ather has driven with [C]hildren when he has been drinking and has placed his enjoyment before the best interest of [C]hildren….

(*Id.* at 4-5). In its Pa.R.A.P. 1925(a) opinion, the court further elaborated:

During a dispute over custody between [J.I.], [M]other's boyfriend, and his ex-wife, [J.I.]'s ex-wife found and gave [Father] a copy of a confidential Alcoholics Anonymous form on which [J.I.] made a list of people that he had offended in the past and to whom he should make amends. In that list [J.I.] noted inappropriate sexual behavior during puberty or early adolescence. At the custody trial in the current case, [Mother] called as a witness Dr. Shannon Edwards, who conducted a psychological evaluation of [J.I.] on January 10, 2020 and January 20, 2020. Dr. Edwards testified that [J.I.] reported inappropriate sexual behavior in his youth for which he had therapy as a teenager. She also testified that he had participated in therapy in his 20's and 30's for depression and anxiety and substance abuse. According to Dr. Edwards, she conducted several psychological tests and found all of the test results to be within the normal range. She said that there were no red flags and that she found nothing troubling and found no psychiatric illness. While she noted that [J.I.] had been treated for anxiety and depression, she testified that there was nothing to indicate that he was unable to parent unsupervised.

As noted in the August 24, 2020 [order and findings of fact],

- 10 -

during the custody dispute between [J.I.] and his ex-wife, an allegation was raised that he had on one occasion inappropriately touched his daughter. Evidence was presented that that allegation of abuse was reported to Lawrence County Children and Youth Services and to the Child Abuse Hotline and that the report was determined not to be founded. No charges were ever filed regarding the allegation. And in the case now before the [c]ourt, [F]ather did not call any witnesses or present any evidence to prove this allegation.

In the [August 24, 2020 order], this [c]ourt detailed its concern with the history of both [F]ather and [M]other of disobeying [court orders]. While the allegation made in [J.I.]'s custody dispute with his ex-wife [was] being explored, the [c]ourt ordered that [C]hildren not have contact with [J.I.]. [M]other blatantly disobeyed that order at least until December 2019. Because of alcohol abuse allegations, on May 25, 2019, this [c]ourt ordered both parties not to consume alcohol during their periods of custody. In this [c]ourt's June 18, 2019 [o]rder, this [c]ourt made a finding that, "testimony is clear, including [F]ather's own admission, that [F]ather has consumed alcohol during periods of his custody of [C]hildren. [F]ather claims that he has consumed alcohol but only when he has been out of the house while his mother or another responsible adult is watching [C]hildren. [A.M.S.] has testified that she has seen her father consume alcohol during times that he has been exercising custody of both her and her brother." And as the [c]ourt noted in the August 24, 2020 [findings of fact,] both [M]other and Father have attempted to influence the testimony of [C]hildren by discussing matters concerning custody that they were forbidden from discussing with [C]hildren.

(Rule 1925(a) Opinion, filed 12/4/20, at 1-3).

The court found that factor 2.1 favored neither party as the allegations of J.I.'s alleged misconduct were not proven and there was no indication the allegations were founded. (*See* Trial Court Opinion and Order, filed 9/4/2020, at 6). The court found that factor three favored Mother, because she had

been the primary caregiver all of Children's lives, and Father was not very involved with Children's education. (*Id.* at 7). The court found that factor four favored Mother, as she was the primary caregiver for most of Children's lives and due to Father's inconsistency with his custody periods. (*Id.*) The court found that the fifth factor favored neither party, as both parents had extended family who were willing to assist with child care. (*Id.*) With regard to the sixth factor, the court found it favored neither party as Children have a strong sibling bond with each other and a continuing bond with Father's adult son, their half-brother. (*Id.*) Children would have an additional half-sibling, as Mother was due to give birth to J.I.'s child in September 2020. (*Id.*)

The court found that the seventh and eighth factors favored neither parent, as the preference of Children was impossible to discern due to the conduct of the parents where both parents had attempted to turn Children against the other parent. (*Id.* at 7-8). Similarly, the court found that the ninth factor favored neither parent because both parents had put their own desires ahead of Children's needs. (*Id.* at 8). The court found the tenth factor favored Mother, as she was more involved in the daily physical, emotional, developmental and educational needs of Children. (*Id.*)

With regard to the eleventh factor, the court noted that although the parties lived only fifteen minutes from each other, A.M.S. would need to change schools if Father was awarded primary custody. (*Id.* at 8-9). With regard to the twelfth factor, the court found that it favored neither party, as

both parents were not always available to care for Children due to their work schedules, but had family members who could assist with childcare. (*Id.* at 9). The thirteenth factor favored neither party, as both parties cooperated up until the allegations of sexual impropriety but have not cooperated since. (*Id.*)

The fourteenth factor favored neither party as the court expressed concerns both about J.I.'s history of alcohol and drug abuse and Father's history of and potential present alcohol abuse. (*Id.* at 9-10). In its Rule 1925(a) opinion, with regard to Father's drinking, the court observed:

> [O]n June 18, 2019, following a hearing on a Petition for Special Relief filed by [M]other, this [c]ourt made a finding that, "testimony is clear, including [F]ather's own admission, that [F]ather has consumed alcohol during periods of his partial custody of the children . . ." As detailed in the August 24, 2020 Findings of Fact, [F]ather has a history of alcohol problems. According to the testimony of [M]other at the trial, their separation and ultimate breakup was the result of [F]ather's excessive alcohol consumption that led to his firing from at least one job. Despite the May 25, 2019 [o]rder of [c]ourt that there be no alcohol consumption during either party's period of custody, [F]ather violated that [c]ourt [o]rder.
>
> As noted in the August 24, 2020 [o]rder, there was clear evidence that both parties were attempting to influence [C]hildren by asking them to lie or pressuring them with questions about their testimony and the upcoming custody case. [F]ather's history of alcohol abuse and indicators that [F]ather's desire for alcohol continues to interfere with his parenting are two factors considered along with many other factors, as detailed in the [o]rder and [o]pinion of August 24, 2020….

(Rule 1925(a) Opinion, filed 12/4/20, at 3-4).

The fifteenth factor favored either neither party, as neither biological parent had a history of mental or physical illness, although J.I. suffered from anxiety and depression. (**See** Trial Court Opinion and Order, filed 9/4/2020, at 10). Finally, the court noted that all other relevant factors had been discussed. (**Id.**)

Regarding Father's first issue challenging the court's findings related to J.I., we note that Dr. Edwards described the purpose of the evaluation was to "opine if mental health or substance abuse issues were present in [J.I.] and, if present, the degree to which they may or may not impact his capacity to parent [his minor daughter]." (**See** N.T., 8/12/20, at 7). Dr. Edwards noted that J.I. mentioned his childhood sexual behavior during the evaluation, recognized that the behavior was wrong, and began therapy from a young age as a result. (**Id.** at 9-10). Dr. Edwards testified that J.I. had previously received treatment at rehabilitation facilities for substance abuse and depression and anxiety, but was unable to obtain records due to the amount of time that had passed since treatment. (**Id.** at 14-15). Dr. Edwards noted that she had spoken with J.I.'s daughter's therapist and that following the unfounded allegations, J.I.'s daughter expressed a desire to return to J.I.'s custody; the therapist recommended supervised visitation not due to safety concerns but to prevent further, presumably unfounded, allegations. (**Id.** at 16-17). Dr. Edwards' evaluation of J.I.'s daughter was inconsistent with that of other children who made sexual abuse allegations or disclosures, and she

remained unaware of any criminal charges that had been brought as a result of the allegations. (*Id.* at 42-43).

Dr. Edwards examined J.I. using a variety of clinical assessments and his results did not raise any red flags; he did not have elevation on clinical scales related to diagnoses. (*Id.* at 17-18, 20). Dr. Edwards testified that J.I. had been diagnosed with adjustment disorder with anxiety by his therapist and that she deferred to this diagnosis. (*Id.* at 21-22). Dr. Edwards described J.I. as honest and forthcoming, having openly acknowledged his substance abuse history and sexual issues in adolescence. (*Id.* at 22-23). Her overall conclusions were that there was nothing in the data, testing, or collateral documents to indicate that J.I. did not have the capacity to parent or to safely provide care to any child unsupervised. (*Id.* at 23-24).

Essentially, Father attacks the weight the court placed upon Dr. Edwards' expert report. Although Father characterizes the report as only a parental capacity evaluation, the testimony makes clear that Dr. Edwards considered J.I.'s self-reported sexual history and also conducted a series of psychological tests to determine whether he presented a threat to any child if allowed unsupervised contact. As the court noted, the allegations against J.I. were ultimately determined to be unfounded and Dr. Edwards' report raised no red flags regarding J.I.'s current psychological state. Accordingly, despite Father's request that we reweigh the court's finding on this factor in his favor, the record supports the court's conclusions. *See C.R.F., supra* (reiterating

that where trial court's conclusions are reasonable as shown by record evidence and those conclusions are not result of error of law, appellate court is bound by those conclusions).

Further, with respect to Father's second issue related to the court's findings about Father's drinking, we disagree that the court relied solely on A.M.S.'s testimony. Rather, Mother also testified that her marriage with Father was "chaos" and that she "was the one picking up the pieces after his drunken episodes." (**See** N.T., 8/12/20, at 52). Mother testified that she ended the marriage after Father went on alcoholic benders every weekend; conducted an extramarital affair; and lost his job due to his drinking. (**Id.** at 53-54).

At an earlier hearing, Father admitted that he had been fired from his job due to his drinking and failing an alcohol test. (**Id.**) Mother stated that all of the prior custody orders had language prohibiting drinking, because Father had previously been found in contempt by the court for driving and drinking with Children in the car.[4] (**Id.** at 55). Mother also testified that in May 2019, she filed a petition for special relief averring that Father had been drinking during his periods of custody. (**Id.** at 56-57). Following a hearing in June 2019, the court noted in its order that Father had admitted to consuming alcohol during his periods of custody, but claimed that he had only consumed

_____

[4] The court's orders and Mother's motions for special relief were admitted into evidence as Plaintiff's Exhibits D-G.

- 16 -

alcohol when he was out of the house and another responsible adult was watching Children. (*Id.* at 57). At that hearing, A.M.S. testified that she had seen her father consume alcohol during custodial periods. (*Id.* at 57). Mother further testified to a series of incidents on June 28, 2019, July 13, 2019, July 20, 2019, and July 27, 2019, when Father was supposed to have custody of Children but either was drinking at a bar; had posted pictures on Facebook of himself drinking alcohol; or had left Children with his mother to drink alcohol. (*Id.* at 59-60). Additionally, Mother expressed concern that she found a receipt for a 12-pack of beer purchased near Father's house on the day of his custodial period. (*Id.* at 62-63).

Father, however, denied drinking 24 hours prior to his custodial periods or around Children. (*Id.* at 159). He averred that he had a drug and alcohol evaluation and did not receive treatment. (*Id.*). Father denied that he had left Children at home to drink, claiming, for example, that he had stayed late at a Memorial Day cookout to help clean up. (*Id.* at 167-68). Father claimed that the June 2019 order which took away his overnights was "based on a lie," because A.M.S. had first stated that she saw Father drinking, but then changed her statement to aver that Mother had told her to say that. (*Id.* at 169, 171-72). Father claimed that he had not lost his job because of his alcoholism, but because he "went to a Super Bowl party and … went to work and … fell asleep and … still smelled like alcohol." (*Id.* at 173).

Again, Father's argument requests that we reweigh the court's findings.

Nevertheless, the court heard testimony from both parents regarding Father's drinking habits, as well as reviewed its own past orders regarding Father's drinking habits. Our review of the record supports the trial court's analysis. Thus, we accept the trial court's findings and decline to reweigh the evidence. ***See C.R.F., supra***. Accordingly, we affirm the trial court's custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2021